May it please the Court. My name is Chandler Vischer. With me is Elie Aleha. We represent Circle Click Media and CTNY Insurance Group, the plaintiffs' appellants here. I'd like to reserve five minutes in rebuttal if I could, please. The first issue I'd like to address is the class certification question, which where the district court denied class certification, even though it said that even if more than 25,000 class members received the identical contract, which the plaintiffs say is misleading, the district court said, quote, individualized inquiry of whether a person was in fact told about the disputed fees existed so that individual issues predominated. And the individual issue, an individual issue is one that you have to, the plaintiff has to prove at trial as to the class. And this question is, did the plaintiff in this case have to prove that none of these class members knew about these hidden fees? And I think that the answer to that question is no. It's very clear under California unfair business practice law, as explained in Fletcher v. Security National Bank that the class certification theory exists.  So, Mr. Fischer, Vischer, is it Vischer? I guess I want to ask today, do you base, because I'm uncertain, as I think the district court was uncertain, at various times throughout this litigation on whether you base your class certification theory on Regis's documents, the way that they were presented to the customers, or both? Our claim that we have on appeal, the ORS and BCS claims, are based entirely on the documents. It seems different than what you were arguing down below. Well, Your Honor, if you look at our motion for class certification on 2 ER 358, where we say the issue on the 17-200 is the failure to adequately disclose certain fees may confuse consumers, is what the district court had decided. And the kitchen fee was one of the fees you were talking about at that point, right? I mean, you abandoned the kitchen fee on appeal, but not to the district judge. Isn't that right? No, Your Honor. We, on request for reconsideration, we tried to say, look, we, in our 17-200 claim, it's true. We said, okay, the failure to properly disclose involves three fees, the ORS, the BCS, and the kitchen amenities fee. The kitchen amenities fee is a very different kind of fee because, first of all, there's another document that they get that talks about that fee. And we thought that that other document was misleading because it called that fee optional when, in fact, it was mandatory. But that fee is much more likely to have been discussed during oral discussion about the case. They get a bill for that every month. So it's a very different basis for that fee, to show that that fee was misleading is more complicated than showing that the ORS and the BCS fees were misleading because the ORS and the BCS fees are not mentioned ever. As a matter of fact, there's no uncontradicted testimony in the record that those fees are ever discussed in the oral presentations. But CircleClick, in fact, read them before entering the contract. That's not true, Your Honor. Wasn't that Ms. Ware's original testimony? No. No, that's not correct, Your Honor. In September of 2010, they entered into the contract. And in the testimony of CircleClick's principal, in December of 2010... I may have had the name wrong. It may not be Ware. No, you're correct. You're correct, Your Honor. You're talking about the right person. It's just that her testimony was that she was able to read the terms and conditions in December of 2010. So that was about three months later. So the contract was entered into in October, started in October of 2010, and she read it three months later. So obviously, in our view, and I think the correct statement of the law is that you have to deal with things as the time the contract was entered into. And at that time, the plaintiffs, neither plaintiff had actually looked at those, that fine print in the back of the contract. And those fees, the ORS and the BCS fees, are mentioned in that tiny print on the back. You aren't told there how much those fees are, but there is some mention of them. But... So... How can you... Because you're saying now that you're just going on the documents. Is that correct? The written documents? Yes, Your Honor. I think that... So I guess my question is how can your class be certified without any references to what the Regis's sales representatives or employees orally told customers? Because there you get the question of what does California unfair business practice law require. And as Fletcher made clear, and in Fletcher you had actually a case very similar to this, you had a contract in which the bank used the 360-day year. And the some people knew what a 360-day year was, even though in Chern the Court had said that that was misleading. But in Fletcher, the trial court refused to permit the unfair business practice claim to go forward, saying, quote, to proceed as a class action on the ground that proof of each individual borrower's lack of knowledge was required. And the Supreme Court said, no, that's not true. You can show in an unfair business practice case, you don't have to show that there was no knowledge. I'm just going, based on what you appeared to concede during oral argument at the district court, that a customer who is told about the hidden fees would not be deceived. That's absolutely correct, Your Honor, and that's exactly what the Supreme Court said in Fletcher. It said, yes, it's true that if the bank came in and showed that some of those people knew about the 360-day year, that they would not be entitled to restitution. But the Court said, that doesn't affect whether you can get class certified. Class certification does not require that no one was new what was going on. You don't have to fool everybody. So how about MAZA? MAZA is a case that where the Court said everyone in your class has to have been exposed to the same advertisement in our case. In other words, you have to be exposed to the thing on which you base your claim that there's misrepresentation. In our case— You don't think MAZA said they had to have relied? In an unfair business practice case, reliance is a subject of the—only the named plaintiffs have to rely. And in our case, we do show that, and so the named plaintiffs did rely. But what MAZA said was that in order to—your class have to all be exposed to the same advertisement. In that case, they weren't. In our case, they're all exposed to the same misleading, unfair contract. Everyone got the identical contract, which said on the front of it a price, which was much less than you actually had to pay. So it was a misleading contract. It had nothing to do with what was said during the sales presentation. It's true that if your case is based on sales presentations, that you need to show some uniformity there. But as the Supreme Court in Fletcher said, without requiring—since you can get restitution, quote, without requiring the often impossible showing of the individual's lack of knowledge of the fraudulent practice. So we could never show—you have 28,000 people. We could never show that none of them were ever told about these fees. So if that was the requirement, which the bank and security specific said it was, and the Supreme Court said it wasn't, but if it was the requirement, you could never have a class action based on documents that were misleading, because you'd say, well, somebody might have been told. Kennedy, is there anything in the record that shows approximately what percentage of this putative class was exposed to an oral presentation? There is no uncontradicted evidence that any class member was ever told about the ORS and the BCS fees. There is no— Kennedy, what are you saying? No class member was ever told by a regis representative about these fees? There's no uncontradicted evidence to that. We presented evidence that they had a practice of not discussing these fees. And we had declarations from three individuals, about 11 individuals, but three of the — all of whom said, no one ever told us about these fees. But you acknowledged at the district court that some folks would have been told about the fees. Some people may have been told about the fees, and there wasn't ever— Isn't that why you revised your class definition yourself? We — because Judge Condi had said you couldn't have in your class people who, on the face of the documents, you could tell, knew about those fees. We changed the class definition to eliminate anyone who the documents showed they must have known about the fees. See, there's a difference between knowing about a hidden fee, which you might — if you're a big corporation, you hire a lawyer to— Which means originally, your class included, right, potential class members who had been exposed to an oral presentation? Well— Isn't that right? Isn't that what bothered Judge Condi? No. No? What bothered him was the fact that there was evidence in the record. If you look at some of the contracts, it said in the comments section, it made some mention of ORS and BCS fees and more particularly the kitchen minutes fees. And he thought that including those people in the class was overbought. Now, that, in fact, under California unfair business practice law, you can have people in your class who know the nature of the misleading things. You don't — everybody does not have to be misled. Your time is limited, and I do have some questions regarding the injunctive relief that you sought. Okay. And whether the district court should have remanded your request for injunctive relief rather than dismissed it. Well, I think that — that Polo makes pretty clear that they should have— Well, Polo didn't involve the situation in this case, which would be only a partial remand, did it? Well— All you want, remand— No, no, I don't want a partial remand. I think — I think that one — there's one point in which— Do you want to remand the entire class action? The unfair business practice cause of action. I think that what— No, no, no, I'm talking about the entire action. Polo was a remand of the entire action, right? Remand is— Is that true, first of all? Whether they remanded the entire action in Polo? Yes. Isn't that true? Well, I'm— I don't know. I'm not sure I know the answer to that, Your Honor. I do. It was. It makes a difference, you know, to me, at least. Well, the remand law is, if you look at the statement of the law, it talks about the whole case. But the case law on remand is very clear that you can remand a cause of action. And, of course, Macklin said— Show me a case that — what's your best case that says district court can remand a cause of action? Or for that matter, in this case, it's not even a cause of action, it's just— A remedy. It's just a remedy on a cause of action. Well, I don't want to — I don't think — one thing that in which the— Well, give me a case that says the court can remand only one cause of action of a removed case. You got a citation for that? Yeah, I do. Maybe you can find it while you set aside — come back up and talk to us about that when you come back, since you wanted to reserve some time for rebuttal. May it please the Court, Lee Marshall for Regis. Judge Tashima, to answer your question, it's 78.6 percent. That's the number of customers who go through a tour at Regis and get an oral presentation from a salesperson, 78.6 percent. That's in the record? Is that right? It is, Your Honor. I was looking for it while you were asking the question, and I know it's in our opening brief in front of Judge Conte, the first class cert motion, which is where I was able to find it the most quickly. Well, don't look for it now. Yeah. So I want to hit three points. I want to hit waiver. I want to hit the class cert on the merits, and I want to talk about standing. With respect to waiver and class cert on the merits, we're dealing with an abuse of discretion standard twice over. It's almost abuse of discretion squared. In my mind, they have to get through both here, because they brought a claim based on all of Regis' sales practices. This document's only claim did not exist anywhere in the second amended complaint. It did not exist anywhere in the class cert briefing, and at the class cert hearing, Mr. Vischer specifically disavowed that theory multiple times, and that's in Judge Chen's order. He said part of the mix is that they're trained to tell people you don't have to worry about the service fees. He talked about that they give you the documents in a way that makes you think you don't need to read them. It's the presentation that they were talking about at the class cert hearing, and they have class cert denied. They file a motion for leave to file a motion for reconsideration, and Judge Chen says that what plaintiffs are seeking here is not reconsideration, but new consideration of their claims as recast, not reconsideration of a presented claim. So it's our position that they've waived this document-only claim, and they've waived it twice, because they waived it in the district court, and then when they get up on appeal, what they don't appeal, they don't say anything in their opening brief about Judge Chen's finding in denying leave to file a motion for reconsideration that they did not raise it. So I think that's just waived, but if you want to talk about the merits. I think that the critical distinction that we're talking about here is not, you know, Judge Chen was quite clear. He said, I'm not making them show individualized reliance. The issue here is are we talking about a relatively uniform body of information that the putative class members were exposed to? And we put in evidence below, although it was not our burden on Class Cert, we put in evidence below that the customers were exposed to different pieces of information because the sales process is, in the words of one of our declarants, highly customized, highly individualized. And while REGIS trains its people, the training says it's your responsibility to go through the prices so that the prospect will understand what they will be paying, go over the terms and conditions with the customer. The terms and conditions, by the way, do disclose the BCS and office restoration fee and Section 1.7. All of that training is there, but where REGIS, frankly, has made a commitment to get better is making sure that all of its salespeople get trained. The evidence in the record, and this is where this case lines up very squarely with Caldenback, is that the salespeople were not uniformly well-trained. There was one of the key trainings on how to give a tour and disclose pricing where approximately 50% of the salespeople signed up for that training. So what we have here is a sales presentation that is validly not uniform. It is customized, and it's, frankly, it's imperfect at times. It's individualized. We have, it's human, we have evidence in the record, Mr. Vischer says that there's no uncontradicted evidence in the record that these fees were disclosed. I think I want to disagree with that in two ways. First of all, there's lots of evidence in the record that these two fees were disclosed. It's in the declarations of Lori Spindler, and that's at the Supplemental Excerpts of Record 66. It's in the Zaminski Declaration, there are three. This is the second one, Supplemental Excerpts of Record 13. It's in the Harris Declaration, Supplemental Excerpts of Record 49. He always told the customers about the ORS, the BCS, and the kitchen amenities fees. Lori Spindler, who's the salesperson who actually did the circle-click sale, says the same thing. I always went through the terms and conditions. I always disclosed these fees. Now, you want to talk about uncontradicted evidence in the record. They submitted declarations from a number of non-named plaintiffs, who were also Regis customers who said, I didn't know about this, I didn't know about this. We found emails to those people where the fees were disclosed. We found contractual addenda where the fees were specifically negotiated and waived at the time of the signing of the contract. So I would point the court to one of the exhibits to the first Zaminski Declaration, SER 5, where there is an addenda where the business continuity service fee is made optional. The same thing with the second Zaminski Declaration at SER 19, the addendum waives the office restoration fee for an old office. So there is lots of evidence that these fees were being disclosed, and the fact that they amended the class definition is really the best evidence that the fees were disclosed. Because what they're saying is, well, let's just exclude from the class definition all the instances where the fees are right there in the comments box on the front page of the office services agreement. The reason they're in the comments box is because they were disclosed, they were discussed, and they were negotiated by the customer. Now, Mr. Fisher tells me that Ms. Ware did not testify that she read this stuff before CircleClick entered the contract. I had missed that coming in. Do you agree? Yeah, let me clarify that, Your Honor, because I think you're both kind of right here. Ms. Ward testified that her partner, Mr. Peterson, handled the original contract, that she fully expected he would have read it, but she was not able to testify on firsthand knowledge whether he did or did not. Mr. Peterson was not deposed. On renewal, when the contractual relationship with Regis was renewed, she read it. She got that she had an electronic version of the terms and conditions. It was blown up. She read it. She read the whole thing. That's the clarification. And then they signed it. Entered the renewal. They signed the renewal. Yes. Yes, Your Honor. What's your strongest case that the district court properly dismissed the injunctive rather than remanded the request for injunctive relief? Well, you know, the district court was never asked to remand, and so we can, I think, fairly debate whether that's waivable or not waivable. I think that there's . . . I understand what 1447C says on that. It says shall. On the other hand, we have a case that's been litigated for six years. There's clearly subject matter jurisdiction in the district court. There's no question about that under CAFA. That was never contested. And so what they're saying is we want to take not just one claim, right, but one part of one claim, one form of relief for one claim, and have that remanded. And I think you could fairly make an argument of waiver there because that was never asked for in the district court. And I . . . So I'm going to leave that there. But in terms of the case law, I'm sorry, I didn't mean to interrupt. The ground of the dismissal was that these plaintiffs could not be further harmed, right, because they no longer had a contractual relationship with the defendant. Lack of standing. Correct, Your Honor. Is that right? Now, let me ask this question, long time since I looked at California law, but under California law, there must be a similar standing requirement. You know anything about that? You know, the standing requirements in California are different. I know they're a little bit weaker, but, I mean, how much different, do you know? Well, I think what I would say is that if you're going to ask for an injunction, you know, it may not be framed in jurisdictional terms the way it is in federal court, but if you're going to ask for an injunction, you need to show, you should be able to show that there's some kind of individual threat of harm in the future that . . . I think that's my question. Under California law, would a plaintiff in this circumstance, in other words, who no longer has a contractual relationship with the defendant that he wants to enjoin, does that kind of plaintiff have standing to pursue injunctive relief under California law in state court? Yeah. I think it's tricky. So there's a real party and interest test under California law, and we would not contest that CircleClick was a real party and interest here, and that's frequently how standing is described in California state court. So it's really sort of an apples and oranges kind of thing, but what I would say is that the availability for injunctive relief is not just, you know, you show me something that you think is misleading, and I give you an injunction. But if this case was in state court, the public injunction claim would not have been dismissed. I mean, isn't that McGill? McGill says if you're an injured party, even though you don't have anything going forward, you can still get the injunction. So, McGill doesn't frame it quite that way, but McGill did come out after Judge Chen entered his order, and we did not defend that second half of his order and summary judgment based on the McGill decision. So that's correct. We have not, you know, California Supreme Court said what the law was there, and we're not obviously contesting that. But if so, I mean, it's a very odd circumstance where you bring a state law claim to Federal Court. You can't get it adjudicated in Federal Court because of lines and so forth. Well, let me suggest that there are ways to do it, right? I mean, they could have brought an individual claim in California state court, would not have been removable under CAFA, could have asked for a public injunction. That's one possible way of going about it. I think, you know, CAFA obviously represents a congressional determination that these kinds of cases belong in Federal Court, and they did that against the backdrop, obviously, of what Article III's limitations are. And I think the other point I would make here is, you know, they, the plaintiffs admit repeatedly, actually, in their reply brief, that, and I'll just quote from one instance, this is page 27 of their reply, Regis agrees with plaintiffs that the injunctive relief may not be split and remanded separately. So what they're saying here is, and I think this is right, because I don't think you can split this unfair competition law claim into different forms of relief. California is pretty darn clear that it doesn't allow for claim splitting, right? So we have adjudicated the unfair competition law claim in significant part here, right? There's been an offer of judgment and an acceptance of offer of judgment on the individual damages, on the individual restitution claim, including the unfair competition law claim. They're saying, we can't split it. They've already got a remedy for that restitution part, and now they're saying, just take the injunctive relief and throw it back down to state court. The offer of judgment was pretty darn clear, they're not waiving anything. They're not waiving the right to appeal the injunctive decision. There was nothing in there about saying, and we're going to ask for remand on appeal, right? So now we're in a position, right, where they have said, we're going to accept the offer of judgment on restitution, but we want to split this claim and have the court send back the only part of it that's left, the only part of it that's left, that's injunctive relief. And at the same time, they admit repeatedly in their reply, you cannot split the claim. That's irreconcilable. I just don't see how they can get past that combination of circumstances. I do want to talk about the very well-reasoned opinion in Davidson for just a second, because I think that controls the standing issue here. You know, in Davidson, there was at least an allegation of future harm. And in our case, not only was there no allegation of any future intent to purchase the product, use the services, anything else, but this case was decided on summary judgment, not just a motion to dismiss. And they had an opportunity to put in evidence on that point, which they did not do. So I think this case fits squarely into the Davidson sort of, I don't know, exception, if you will, how Davidson reconciled the other circuits' law and said in those other three circuits where they had gone the other way, in that footnote, it said those cases, there was no allegation of future harm. This case is exactly like those other circuits, and in fact, it's even more so because they had an opportunity on summary judgment. They didn't put in that evidence because CircleClick had colorfully and emphatically denied in that case. Thank you. As I had said, there's only three, there's no uncontradicted evidence that the ORS and Mr. Lee has said that there's three declarations. He mentions three declarations where his people said they talked about this. But those are the, those are in contradiction to our declarations as the three people. So we had like seven or eight declarations saying we weren't told about it. They contradicted three of them. So there's no uncontradicted evidence about this. Now, he talks about 78 percent of the people were, went through a sales process. Well, we're not contesting that people went through a sales process. What we're saying is they were given a document that was misleading. Everybody was given the same document. And the question of, on the question of this future harm, we think that Harrell v. Sebelius, 747 Fed 3, 1099 and 1109 is applicable here, because in that case, the Ninth Circuit distinguished Lyons by stating that, but unlike Plaintiffs and Lyons, Harrell's alleged injury was ongoing at the time the complaint was filed. An injunction would have redressed Harrell's injury. Well, in our case, at the time the complaint was filed, we were still in contract with Regis. Regis had not imposed the fees yet. But that gives you standing if you get a class certified, and if you don't get a class certified, the claim is moot, right? No, Your Honor. If you get a class certified, you're in a stronger position, because under Pitts v. Terrible Herbs, the district court said if the district court certifies the class, certification relates back to the filing of the complaint. So in a class case, you've got that automatic thing. But, you know, what Harrell said was the individual, you can't just say the class has standing, so you don't the individual doesn't have to have standing. So what Harrell said was the individual, at the time they filed the complaint, had standing. And that's all you need here. You don't think an injunction claim can become moot during dependency of a lawsuit? I mean, it happens all the time. Well, in cases that are where you have a something that's transitory, such as in our case, if you know about these fees, you can't ever be misled again. In other words, you've got a contract that has hidden fees in it. As soon as you the defendant comes and says you have to pay this fee so you find out about it, you can't thereafter say you're going to be misled. And so and that's the kind of case where Harrell is saying, in Harrell, the court said that it's unlike Lyons, Harrell's alleged injury was ongoing. And about a month later, after the complaint was filed, Harrell was repaid the money she was owed, and so she didn't have that claim anymore. I just have one last question for you, because your time is out. Do you admit, acknowledge that you didn't ask Judge Chen for a remand to state court on the preliminary injunction request? We think that that's true, Your Honor. And I think we base that because at that time, Polo was out and said you didn't have to do that. And so because Polo had not been out and that's why you say that, you didn't ask him that? No, I think Polo said that you didn't have to. Polo says you don't have to make a motion, that it's the responsibility of the district court to remand. And so we didn't have to say in the district court, because the law was very clear in the initial claim. And Polo makes it very clear that you don't have to make that request. Thank you very much. Thank you. Thank you both for your presentations here today, Mr. Marshall, Mr. Fisher. A Circle Click Media and CTNY Insurance Group versus Regis Management Group is now submitted. So the last case on our docket for this morning is Sacramento EDM Inc. and Dan Folk versus Heinz Aviation Industries.
judges: Tashima, Murguia, Hinkle